UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WESTERN RESERVE MUTUAL CASUALTY COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) Cause No. 1:22-cv-00449 |
| vs. | ) ) |
| FREIGHTCO ACQUISITIONS LLC dba FREIGHTCO LLC, and SDI LAFARGA, LLC, | ) ) ) ) |
| Defendants. | ) ) |

### WESTERN RESERVE MUTUAL CASUALTY COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Western Reserve Mutual Casualty Company ("Western Reserve"), by counsel, for its *Complaint for Declaratory Judgment* against FreightCo Acquisitions LLC, dba FreightCo LLC ("FreightCo") and SDI LaFarga, LLC ("SDILF"), states as follows:

#### INTRODUCTION AND THE PARTIES

1. Plaintiff Western Reserve a declaratory judgment pursuant to F.R.C.P. 57 and 28 U.S.C. § 2201 that there is no coverage, and thus Western Reserve has no duty to defend or indemnify, under a commercial general liability policy of insurance issued by Western Reserve to Defendant FreightCo in connection with an underlying lawsuit filed by Defendant SDILF, currently pending in the Allen County Superior Court, State of Indiana.

2. Plaintiff Western Reserve is a mutual insurance company incorporated under the laws of Ohio, which treats mutual insurance companies as corporations. Western Reserve's principal place of business is in Wooster, Ohio.  Western Reserve is therefore a Citizen of the State of Ohio for jurisdictional purposes.

3. During all times relevant to the allegations herein, Western Reserve was doing business in Indiana.

4. Defendant FreightCo is, and at all relevant times hereto was, an Indiana limited liability corporation with its principal place of business in Fort Wayne, Allen County, Indiana.

FreightCo has three (3) individual members: John R. Adams, the Chief Executive Officer; Dennis K. Brankle, the Vice President; and Bradley S. McDonald, the President and registered agent of FreightCo.  Adams, Brankle, and McDonald are natural persons, each of whom maintain their domicile in the State of Indiana, and thus are citizens of the State of Indiana.  Therefore, as a limited liability company with each of its members domiciled in the State of Indiana, FreightCo is a citizen of the State of Indiana for jurisdictional purposes.

5. Defendant SDILF is a limited liability corporation with its principal place of business in New Haven, IN.  SDILF's members are a joint venture between Steel Dynamics Inc., which is incorporated under the laws of the State of Indiana with its principal place of business in Fort Wayne, Indiana; and La Farga Group, a holding company incorporated in and with its principal place of business in Barcelona, Spain.  Therefore, is a citizen of the State of Indiana and the Country of Spain for jurisdictional purposes.

## BACKGROUND FACTS

### A. THE WESTERN RESERVE POLICY

6. Western Reserve issued a commercial general liability policy to FreightCo, policy number PACKWLS1341920438, for the period January 13, 2021, to January 13, 2022 (the "Policy").  A certified copy of the Policy is attached hereto and incorporated herewith as Exhibit "A."

7. The Policy provides general liability coverage, in pertinent part, as follows:

> **SECTION I - COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
> > **(1)** The amount we will pay for damages is limited as described in Section Ill - Limits Of Insurance; and
> > **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A or B** or medical expenses under Coverage **C.**

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**
>
> **b. This insurance applies to "bodily injury" and "property damage" only if:**
>   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>   **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(See, Ex. A, p. 18)

8.  The Policy defines "occurrence" and "property damage," in pertinent part, as follows:

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> **17.** "Property damage" means:
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
> For the purposes of this insurance, electronic data is not tangible property.

(See, Ex. A, pp. 31-32)

9.  In addition, the Policy includes an endorsement titled "Limitation of Coverage to Designated Premises or Project" (form no. CG 21 44 07 98), which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Premises: REFER TO THE PREMISES LISTED ON THE COMMERCIAL GENERAL LIABILITY SCHEDULE |
|---|
| Project: |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

(See, Ex. A, p. 42)

    10.    The Commercial General Liability Schedule identifies the following premises:

**COMMERCIAL GENERAL LIABILITY SCHEDULE**
Location and Description of Hazards

Loc 1   11120 1/2 BLUFFTON RD , FORT WAYNE, IN 46809

Classification 61226    BUILDINGS OR PREMISES - OFFICE - OTHER THAN NOT-FOR-PROFIT

| | Territory | AREA | Rate | Advance Premium |
|---|---|---|---|---|
| Premises / Operations | 504 | 1500 | 132.206 | $201 |
| Products / Completed Operations | 999 | | | INCLUDED |
| | | Increased Limit | | Advance Premium |
| Damage To Premises Rented To You | | $300,000 | | $88 |

(See, Ex. A, p. 17)

    11.    The Policy also includes certain conditions to coverage which have a bearing on the issues in this declaratory judgment action, as follows:

    **2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written no-tice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(See, Ex. A, pp. 27-28)

**B.  THE SDILF LAWSUIT**

12.    On May 9, 2022, SDILF filed a lawsuit against FreightCo in an action titled *SDI LaFarga, LLC v. FreightCo, LLC,* Allen County Superior Court, State of Indiana, Cause No. 02D03-2205-CT-000214 (the "SDILF Lawsuit"). A true and correct copy of SDILF's Complaint

for Damages filed in the SDILF Lawsuit is attached hereto and incorporated herewith as Exhibit "B."

13. In the SDILF Lawsuit, SDILF alleges that it had a longstanding relationship with FreightCo, whereby SDILF hired FreightCo to locate and secure freight carriers to transport SDILF's product, i.e., copper coils, to SDILF customers.  (Ex. B, ¶ 6)

14. SDILF alleges that on or about July 23, 2021, SDILF contacted FreightCo to locate a carrier to ship a load of copper coils to a customer in New York.  (Ex. B, ¶ 8)

15. FreightCo allegedly entered into a Broker Carrier Agreement with carrier JRO Global, Inc. ("JRO") to transport SDILF's copper coils.  (Ex. B, ¶ 10)

16. According to the complaint, on July 23, 2021, SDILF notified FreightCo that the carrier that arrived to pickup SDILF's copper coils was not JRO, and requested paperwork confirmation from FreightCo that the carrier was, in fact, JRO.  (Ex. B, ¶ 13)

17. SDILF alleges that FreightCo notified SDILF that same day that the carrier present to pick up SDILF's copper loads was JRO, and in reliance of this representation, SDILF released the load to the carrier containing 43,527 pounds of copper coils, valued at $199,192.61. (Ex. B, ¶ 15-16)

18. SDILF alleges that it released a second load of copper coils to JRO for transport to New York on July 24, 2021, containing 43,767 pounds of copper coils, valued at $197,883.74. (Ex. B, ¶ 17)

19. SDILF then alleges that on or about July 26, 2021, it was informed that both loads of copper coil had been stolen.  (Ex. B, ¶ 19)

20. SDILF was able to recover the first load of stolen coil, but the second load of stolen coil has not been recovered.  (Ex. B, ¶ 20)

21. In the Lawsuit, SDILF alleges causes of action for breach of contract implied-in-law, negligent hiring, and negligence against FreightCo.  (Ex. B, pp. 3-5)

22. Based on information presently known to Western Reserve, FreightCo was first notified of the loss by SDILF on or before August 6, 2021.

23. The SDILF Lawsuit, filed on May 10, 2022, was served on FreightCo on May 12, 2022.

24. On June 16, 2022, Plaintiff SDILF filed a motion for default judgment, which the Court granted on June 21, 2022.

25. Default judgment in the amount of $198,783.74 was entered against FreightCo accordingly on June 21, 2022.

26. After entry of default, FreightCo retained defense counsel, which filed a motion to set aside and vacate the default judgment on July 7, 2022.

27. By order dated September 2, 2022, the court in the SDILF Lawsuit granted FreightCo's motion and vacated the default judgment against it.

28. FreightCo provided first notice of the loss and the SDILF Lawsuit to Western Reserve on July 20, 2022.

29. By letter dated August 1, 2022, Western Reserve reserved rights to deny coverage to FreightCo in the SDILF Lawsuit based upon FreightCo's failure to provide Western Reserve timely notice of SDILF's claim or of the "suit" in accordance with the terms of the Policy. A true and correct copy of Western Reserve's August 1, 2022, letter is attached hereto and incorporated herewith as Exhibit "C."

30. By letter dated September 20, 2022, Western Reserve agreed to defend FreightCo in the SDILF Lawsuit, subject to a reservation of rights, based on the terms, conditions, and limitations in the Policy that may apply to bar or limit coverage for the damages sought in the SDILF Lawsuit. A true and correct copy of Western Reserve's August 1, 2022, letter is attached hereto and incorporated herewith as Exhibit "D."

## COUNT I: DECLARATORY JUDGMENT

31. Plaintiff hereby reiterates and incorporates by reference the material allegations set forth in Paragraphs 1 through 30 herein.

32. FreightCo was notified by SDILF of its claim in connection with the theft of copper coils shipment on or about August 6, 2021.

33. FreightCo was served with the SDILF Lawsuit on or about May 12, 2022, and a default judgment was entered against it on June 21, 2022, but which was vacated by order dated September 2, 2022.

34. FreightCo did not notify Western Reserve of either the claim or the SDILF Lawsuit until July 20, 2022.

35. Under the Policy, FreightCo was obligated to notify Western Reserve of a claim against it "as soon as practicable," which FreightCo did not do, thus breaching its obligations under the Policy.

36. Under the Policy, FreightCo was obligated to notify Western Reserve of a "suit" against it "as soon as practicable," which FreightCo did not do, thus breaching its obligations under the Policy.

37. Accordingly, FreightCo's failure to timely notify Western Reserve of the claim and/or the Lawsuit in accordance with the terms and conditions under the Policy vitiates coverage for FreightCo for the SDILF Lawsuit.

38. In addition, the claims and allegations against FreightCo in the SDILF Lawsuit involve losses arising out of the alleged theft of SDILF's copper coils by a third party.

39. The theft of SDILF's property by a third party, and FreightCo's liability for such damages (if any) does not constitute "property damage" caused by an "occurrence" as defined by the Policy and applicable law.

40. In addition, the Policy's Limitation of Coverage to Designated Premises or Project bars coverage for the SDILF Lawsuit.

41. Accordingly, there is no coverage for the damages sought in the SDILF Lawsuit, and thus Western Reserve has no duty to defend or indemnify, or pay any settlement, judgment, award, or verdict for or on behalf of FreightCo in the SDILF Lawsuit.

42. Under the terms and conditions of the Policy, Western Reserve has no duty to defend, indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of FreightCo in connection with the SDILF Lawsuit.

43. Defendant SDILF is named as nominal but indispensable parties to this litigation, because it is the underlying plaintiff and claimant which may be impacted by the insurance coverage available to FreightCo under the Policy, and it should be bound by any determination with regard to insurance coverage under the Policy made herein.

WHEREFORE, Plaintiff Western Reserve Mutual Casualty Company ("Western Reserve") hereby requests that this Court enter declaratory judgment that Western Reserve has no duty to

defend, indemnify, or pay any claim, settlement, judgment, verdict, or award on behalf of Defendant FreightCo in connection with the claims, damages, and causes of action asserted in the SDILF Lawsuit; that Western Reserve may withdraw its defense of FreightCo in the SDILF Lawsuit upon entry of such declaratory judgment; that defendant SDILF is equally bound by this judgment; and all such other proper relief in the premises.

                LEWIS WAGNER, LLP

                BY: */s/ Meghan E. Ruesch*
                     MEGHAN E. RUESCH, # 32473-49
                     EDMUND L. ABEL, # 36293-49
                     ***Counsel for Plaintiff Western Reserve Mutual Casualty Company***

LEWIS WAGNER, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN  46201
Telephone:  317-237-0500
Facsimile:  317-630-2790
mruesch@lewiswagner.com
eabel@lewiswagner.com